UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CARL CURRY,

      Plaintiff,                      Case No. C2-03-CV-1053
                                               JUDGE GREGORY L. FROST
    v.                                    Magistrate Judge Kemp

CONSOLIDATED COAL COMPANY, et al.,

      Defendants.

## OPINION & ORDER

Currently before the Court are several *motions in limine*, responses, and replies thereto filed by Plaintiff Carl Curry ("Plaintiff") and Defendants Consolidated Coal Company and Consol Energy Company ("Defendants"). The Court will address each motion and responsive filing in turn.

### I. DISCUSSION

A.    Defendants' motions *in limine*

    1.    **Exclude evidence of their financial worth**

Defendants move to prohibit the introduction of any evidence regarding their financial status, arguing that such evidence is irrelevant and prejudicial. (Doc. # 107). Plaintiff failed to oppose Defendants' motion.

Defendants correctly point out that the only claims that remain in this action sound in the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. (Doc. # 107 at 4 n.1). However, Defendants incorrectly characterize the type of damages the ADEA provides for. Specifically, Defendants argue that because the ADEA allows for the recovery of liquidated

1

damages, not punitive damages, evidence of their financial status is irrelevant. *Id.* at 4-5.

While the ADEA does not authorize the recovery of "punitive" damages it does permit recovery of "liquidated damages" in cases involving "willful violations." *See* 29 U.S.C. § 626(b). The Supreme Court has held, however, that the "liquidated damages" authorized under the ADEA are in fact "punitive in nature." *Commissioner v. Schleier*, 515 U.S. 323, 331-332 (1995) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125 (1985)). Thus, it would appear that Defendants' financial state is relevant.

Upon closer review, the Court concludes that although liquidated damages under ADEA and punitive damages have some similarity of purpose, they are not sufficiently similar to trigger an inquiry into the financial status of an employer. *See Wilson v. Gillis Advertising Co.*, 145 F.R.D. 578, 582 (S.D. Ala. 1993) (holding same). This is so because the ADEA specifically delineates how liquidated damages are to be calculated - once Plaintiff establishes a wilfull violation of the ADEA, he is entitled to the amount of his unpaid minimum wages and "an additional equal amount of liquidated damages." 29 U.S.C. § 626(b). That negates the need for the Court to delve into the traditional punitive damage award analysis, which includes inquiring into the financial state of the defendant. Accordingly, the Court **GRANTS** the Defendants' *motion in limine* to exclude testimony or other evidence of Defendants' financial state. (Doc. # 107).

## 2. Bar evidence contrary to the Court's April 6, 2005 Order on Defendants' motion for summary judgment

Next, Defendants move the Court to exclude any evidence or testimony concerning claims that the Court decided in its April 6, 2005 Order (Doc. # 101). (Doc. # 108).

Specifically, Defendants seek exclusion of evidence or testimony relating to "individuals who were transferred or rehired who were not similarly situated with Plaintiff for a section foreman position." (Doc. # 123 at 3). Additionally, Defendants seek to prohibit the introduction of evidence or testimony relative to Defendants' college recruiting program. (Doc. # 123 at 6). Defendants maintain that such evidence is irrelevant. (Doc. # 108 at 7-8). Unsurprisingly, Plaintiff contends that such evidence is relevant to establish that Defendants acted with discriminatory intent, and seeks to introduce evidence relative to Defendants' decisions to transfer and recall/rehire employees to all available positions. (Doc. # 121 at 2, 4, 5). Defendants' arguments prevail.

After the Court's summary judgment rulings, Plaintiff has two claims remaining under the ADEA. First, Plaintiff alleges that Defendants discriminated against him on the basis of his age in violation of the ADEA by not transferring him to a section foreman position. (Doc. # 101 at 25-26; Doc. # 121 at 1). Second, Plaintiff claims that age was a determining factor in Defendants' decision to not recall or rehire Plaintiff into a section foreman position. (Doc. # 121 at 1; Doc. # 101 at 33-36).

The success of Plaintiff's case relies on one key factual determination: did Defendants offer to transfer him to a section foreman position? This is so because in order to succeed on his failure to transfer claim, Plaintiff must establish that Defendants did not offer to transfer him to a section foreman position but did make such an offer to a similarly situated employee who was not a member of a protected class. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 351 (6th Cir. 1998). If Plaintiff cannot prove that, then his failure to recall/rehire claim fails as well. Simply stated, Plaintiff must establish that "he had shown more than a mere general

interest" in a section foreman position because he admittedly did not formally apply for the position. *Wanger v. Gray Company*, 872 F.2d 142, 145 (6th Cir. 1989). Obviously, if Plaintiff declined the transfer to a section foreman position, he could not show that he had expressed more than a mere general interest in such a position.

Plaintiff seeks to introduce evidence regarding Defendants' hiring actions for all positions and in all situations. (Doc. # 121 at 2, 4, 5). As outlined above, however, only evidence that pertains to similarly situated employees would be relevant. Similarly situated employees would be those that were transferred before the reduction-in-force ("RIF") took place to a section foreman position and those that were recalled/rehired to a section foreman position after being terminated as a result of the RIF. Individuals Defendants hired as Industrial Engineers as a result of Defendants' annual college recruiting program would not be similarly situated to Plaintiff.

Accordingly, the Court **GRANTS** Defendants' motion *in limine* to bar evidence and testimony contrary to the Court's April 6, 2005 Order. (Doc. # 108). The Court hereby adopts and incorporates herein the language to this effect in Defendants' Reply, Doc. # 121, at 7-8.

### 3. Prohibit introduction of mitigation evidence Plaintiff failed to disclose in discovery

Defendants requested documentation regarding Plaintiff's efforts to seek alternative employment after his termination in July 2002. Plaintiff timely produced such mitigation evidence for the time period between July 21, 2002 and July 17, 2003. (Doc. # 124 at 1). According to Defendants, Plaintiff failed to provide any documentation of his job search for the time period between July 17, 2003 and August 11, 2004. *Id.* As such, Defendants seek an order

precluding Plaintiff from introducing any mitigation evidence at trial for this time period. *Id.* Further, Plaintiff admits that he produced evidence regarding his mitigation efforts during August 11, 2004 to November 16, 2004 after the discovery deadline had passed. (Doc. # 120). Defendants request that the Court exclude this evidence, because Plaintiff's late production of it prevented them from verifying the documentation by deposing Plaintiff and having their expert review it, thereby prejudicing them. (Doc. # 109 at 6). Lastly, Defendants move the Court to cut off Plaintiff's back pay after July 17, 2003, arguing that that was the last day Plaintiff timely provided mitigation evidence for. *Id.* at 7.

The Court **DENIES** Defendants' motion in part and **GRANTS** it in part. (Doc. # 109). To begin, the Court **DENIES** Defendants' motion to prohibit Plaintiff from introducing any evidence at trial regarding his job search activities from July 17, 2003 and August 11, 2004. Although Plaintiff did not provide any written documentation, Plaintiff did testify to his efforts during that time period and consequently will be permitted to discuss his efforts during that time at trial. However, the Court will not allow Plaintiff to introduce any written documentation of his attempts to mitigate between July 17, 2003 and August 11, 2004 for failure to produce them during discovery.

The Court **DENIES** Defendants' motion to exclude Plaintiff's evidence of mitigation between August 11, 2004 to November 16, 2004. To alleviate any perceived or actual prejudice the late production may have caused them, the Court will permit Defendants to continue their deposition of Plaintiff for the purpose of questioning him about the late-produced mitigation documentation. This also gives Defendants additional time to verify Plantiff's mitigation evidence with other sources.

Finally, as a result of the above two rulings, the Court **DENIES** Defendants' motion to cut-off Plaintiff's recovery of his back pay as of July 17, 2003.

**B.     Plaintiff's motion *in limine* to exclude spreadsheets relating to Defendants' personnel actions at the Dilworth, Humphry, and Windsor mines, as well as a document entitled "Coal Operations Hiring Actions"**

Plaintiff moves the Court to prevent Defendants from introducing four documents at trial. (Docs. # # 110, 111, 112). The first three detail Defendants' personnel actions from 2002 through 2004 at the Dilworth, Humphry, and Windsor mines. (Doc. # 110 at 1; Doc. # 112, Doc. # 116). The third document is a spreadsheet detailing Defendants' personnel actions for 2003. (Doc. # 111 at 1; Doc. # 116).

Initially, Defendants seek to permission to file a surreply to Plaintiffs' motions in limine that seek to exclude the documents. (Doc. # 127). Because Defendants had an opportunity to address the issue of whether Plaintiffs requested the business records at issue in the response, the Court **DENIES** Defendants' motion.

Plaintiff urges the Court to exclude the Dilworth and Humphry documents because they are not business records, as Defendants admit they created the documents for purposes of this case. (Doc. # 110 at 2). Further, Defendants state that the documents were based on their business records. (Doc. # 119 at 4-8). Plaintiff requested those business records, but Defendants failed to produce them. Thus, Plaintiffs were deprived of the opportunity to review the very documents that formed the basis for the Dilworth and Humphry documents at issue. Accordingly, Plaintiff's motion *in limine* to exclude the Dilworth and Humphry documents is

6

**GRANTED**. (Doc. # 110).

Similarly, Defendants developed the Windsor document for this case and failed to produce the business records that lead to the creation of it after Plaintiff requested them. (Doc. # 119 at 3-8). Accordingly, the Court **GRANTS** Plaintiff's motion *in limine* regarding the Windsor document. (Doc. #112).

Finally, the Court previously struck the "Coal Operations Hiring Actions" document because Defendants failed to produce the business records the document was based on after Plaintiffs requested them. (Doc. # 101 at 13). Thus, the Court **GRANTS** Plaintiff's motion *in limine* regarding the "Coal Operations Hiring Actions" document as well. (Doc. # 111).

### III.  CONCLUSION

The Court **GRANTS** Docs. # # 107, 108, 110, 111, and 112. The Court **DENIES** in part and **GRANTS** in part Doc. # 109. The Court **DENIES** Doc. # 127. As with all in limine orders, if the facts at trial vary from the facts presented in these motions, this Court will revisit the issues addressed herein.

**IT IS SO ORDERED.**

    /s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**